**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Thomas Burgess, | No. CV-25-02944-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Knight Transportation Incorporated, | |
| Defendant. | |

Thomas Burgess ("Plaintiff"), an African-American man who is proceeding *pro se*, has sued Knight Transportation Inc. ("Defendant") under Title VII of the Civil Rights Act of 1964 ("Title VII"), alleging that (1) Defendant has a blanket hiring policy of not hiring job applicants with a felony conviction; and (2) this policy has a disparate impact on African-Americans.

Now pending before the Court are Defendant's Rule 12(b)(6) motion to dismiss (Doc. 47) and Plaintiff's motion to transfer venue to the Middle District of Florida (Doc. 48). Both motions are fully briefed (Docs. 49, 50) and neither side requested oral argument. For the reasons that follow, both motions are denied.

## RELEVANT BACKGROUND

### I.   Factual Background

The following facts, presumed true for purposes of the pending motion to dismiss, are derived from Plaintiff's operative pleading, the First Amended Complaint ("FAC"). (Doc. 46.)

Plaintiff "is an African American man" and "a lifelong resident of Palm Beach County Florida." (*Id.* ¶¶ 5, 46.) Plaintiff spent eight years in federal prison "for crack cocaine." (*Id.* ¶ 10.)

Defendant "is a semi truck company that transports goods all over the lower 48 States of the United States of America" with an address in Phoenix, Arizona. (*Id.* ¶ 7.)

Upon his release from prison, Plaintiff "grew an interest in Semi Truck work." (*Id.* ¶ 21.) In December 2019, Plaintiff "graduated truck driving school." (*Id.* ¶ 23.) In August 2021, Plaintiff "graduated [from] 'The CDL School Miami,'" where he completed a "refreshing course class for truck drivers." (*Id.* ¶¶ 26-28.)

In November 2021, Plaintiff first "made contact with [Defendant] through social media." (*Id.* ¶ 31.) "[Plaintiff] asked [Defendant] if they would hire him while on active probation and they responded that they would not hire drivers while on probation." (*Id.* ¶ 32.) Defendant further informed Plaintiff that "he could apply for a job as a driver with [Defendant] after his probation was terminated." (*Id.* ¶ 34.)

In January 2025, after completing his probation, Plaintiff applied for a job with Defendant. (*Id.* ¶ 35.) At that point, Plaintiff "had 3 years of semi truck driving experience and had driven in 38 States in a Semi Truck." (*Id.* ¶ 39.) "After [Plaintiff] submitted his job application with [Defendant] to be a semi truck driver for them he was soon informed by [Defendant] that his application was denied because of his criminal history record." (*Id.* ¶ 40.)

II.    Procedural History

On February 25, 2025, the EEOC issued Plaintiff a right-to-sue letter. (*Id.* at 41.)

On April 23, 2025, Plaintiff initiated this action in the Southern District of Florida. (Doc. 1.)

On August 11, 2025, the Southern District of Florida granted Defendant's request to transfer this action to the District of Arizona. (Doc. 34.)

On September 24, 2025, Plaintiff filed the FAC. (Doc. 46.)

On October 8, 2025, Defendant filed the pending motion to dismiss. (Doc. 47.)

Plaintiff later responded (Doc. 50) and Defendant did not file a reply.

On October 9, 2025, Plaintiff filed the pending motion to transfer venue to the Middle District of Florida. (Doc. 48.) Defendant later responded (Doc. 49) and Plaintiff did not file a reply.

**ANALYSIS**

The Court, in its discretion, begins with Plaintiff's transfer request. *Cf. Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007) ("We hold that a district court has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection."); *Whitfield v. Levi Strauss & Co.*, 2026 WL 381986, *2 (D. Nev. 2026) ("For judicial economy, the court first resolves the plaintiff's motion to transfer venue.").

I.      Motion To Transfer Venue

        A.      **The Parties' Arguments**

Plaintiff argues that "this case should be transferred to the Middle District of Florida based on the fact that [P]laintiff's work details for the [D]efendant would have been in the Middle District of Florida" and "[i]n the interest of justice and at the convenience of the plaintiff who is pro-se." (Doc. 48 at 3.) Plaintiff contends that Defendant "won't have any trouble traveling to their terminal in the Middle District of Florida." (*Id.*) Plaintiff notes that he "passes through the State of Arizona many times but never stops there for any work detail in his semi truck, therefore [he] may have to fly [to Arizona] for the trial." (*Id.*)

In response, Defendant "does not dispute that it has a terminal in the Middle District of Florida and does business there." (Doc. 49 at 3.) However, Defendant argues that "[o]f the eight factors identified in [*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000)], two through eight are applicable here, and most weigh in favor of venue remaining in Arizona." (*Id.*) Defendant argues that although "a plaintiff's choice of forum generally receives deference, [Plaintiff] is entitled to none here because he seeks to move this case not to its original venue, but to the Middle District of Florida." (*Id.*) Defendant further argues that "none of the events in Plaintiff's case arose in the Middle District [of Florida];

- 3 -

everything was in Arizona." (*Id.*) Defendant also argues that it "is headquartered in Phoenix, and all hiring decisions, including the decision to not hire Plaintiff were made in Phoenix." (*Id.*) Defendant thus argues that "[t]he only connection this case has to Florida is that Plaintiff resided there when he applied for a position with Defendant, and may have performed some work in that state if hired." (*Id.*) Defendant also argues that its litigation costs would be lower if the case remains in Arizona and that "[w]hile trial in Arizona may be less convenient for Plaintiff," he admits that he passes through Arizona for work. (*Id.* at 3-4.) Separately, Defendant argues that Plaintiff's motion is procedurally improper because "[it] is, in substance, a request for reconsideration of the Southern District of Florida's prior transfer order." (*Id.* at 4.)

B.    **Analysis**

28 U.S.C. § 1404(a) allows a district court to "transfer any civil action to any other district or division where it might have been brought" if a transfer would promote "the convenience of parties and witnesses [and] the interest of justice." Section 1404(a) thus vests courts with discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted). Because § 1404(a) governs transfer only in a properly venued case, the first step is to determine whether the transferor and transferee courts are proper venues. *LaGuardia v. Designer Brands, Inc.*, 2020 WL 2463385, *6 (S.D. Cal. 2020). "After it is established that venue is proper in both districts, the court must then weigh multiple factors to determine whether transfer is appropriate." *Id.* at *7.

1.    Whether Venue Would Be Proper In Both Districts

Neither party appears to dispute that venue would be proper in both the District of Arizona and the Middle District of Florida. The Court sees no reason to disagree. Typically, venue is proper in a judicial district (1) where the defendant resides; (2) in which a substantial part of the events or omissions giving rise to the controversy occurred; or (3) if there is no district in which an action may otherwise be brought, in which the defendant

- 4 -

is subject to the court's personal jurisdiction with respect to such action.  28 U.S.C. § 1391(b).  However, "it is clear that section 1391 'has its limitations.'" *Johnson v. Payless Drug Stores Nw., Inc.*, 950 F.2d 586, 587 (9th Cir. 1991) (citation omitted).  "In Title VII employment discrimination cases, the explicit venue provision of Title VII, 42 U.S.C. § 2000e-5(f)(3), applies rather than the general provision found in Section 1391." *Tamashiro v. Harvey*, 487 F. Supp. 2d 1162, 1165 (D. Haw. 2006).  A Title VII claim may be brought:

> [1] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice . . . .

42 U.S.C. § 2000e–5(f)(3).

Defendant argues, and Plaintiff does not dispute, that "all hiring decisions, including the decision not to hire Plaintiff, were made in Phoenix" and that "all witnesses and records are in Arizona."  (Doc. 49 at 3-4.)  Thus, venue is proper in the District of Arizona under the first and second prong of 42 U.S.C. § 2000e–5(f)(3).  Venue is also proper in the Middle District of Florida.  Under the third prong, venue is proper in any district "in which the aggrieved person would have worked," and as Plaintiff argues and Defendant acknowledges (Doc. 48 at 3; Doc. 49 at 3), Plaintiff would have performed at least some work in the Middle District of Florida.

### 2.    Whether Transfer Is Appropriate

The Court next "weigh[s] multiple factors in its determination whether transfer is appropriate in [this] particular case." *Jones¸* 211 F.3d at 498.  There are eight factors that courts frequently consider:

> (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009).  "This list

- 5 -

is non-exclusive, and courts may consider other factors, or only those factors which are pertinent to the case at hand." *Kempton v. Life for Relief and Dev. Inc.*, 2019 WL 5188750, *2 (D. Ariz. 2019). *See also Jones*, 211 F.3d at 498-99 (providing a similar list of factors and noting "that the relevant public policy of the forum state" may be a relevant consideration). Plaintiff, as "[t]he moving party," "bears the burden of establishing that the balance of conveniences favors transfer." *Berry v. Potter*, 2006 WL 335841, *4 (D. Ariz. 2006).

As an initial matter, although "a plaintiff's choice of forum is afforded substantial weight," *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001), Plaintiff is not seeking to transfer this case back to his originally chosen forum (the Southern District of Florida) but rather to an alternative forum (the Middle District of Florida). Plaintiff has not cited, and the Court is unaware of, any Ninth Circuit authority "considering whether a plaintiff's *second* choice of forum is entitled to any, much less great, weight." *Orrell v. Motorcarparts of Am., Inc.*, 2007 WL 895503, *3 (W.D.N.C. 2007).

As for the remaining relevant factors, the Court finds that, on balance, they weigh against transferring this action to the Middle District of Florida. All events giving rise to this action occurred in Arizona, and all witnesses (aside from Plaintiff) and records are in Arizona. (Doc. 49 at 3-4.) Although Plaintiff argues that traveling to Arizona will inconvenience him, he acknowledges that he "passes through the State of Arizona many times" for work. (Doc. 48 at 3.) At any rate, "the relatively small inconvenience to [Plaintiff] is outweighed by the greater convenience that will come from litigating in [Arizona]." *Pierucci v. Homes.com Inc.*, 2020 WL 5439534, *5 (D. Ariz. 2020).

II.    Motion To Dismiss

    A.    **Legal Standard**

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1444-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

### B.    The Parties' Arguments

Defendant argues that "the FAC fails to plausibly allege that Defendant's alleged policy had a significant disparate impact on a protected class." (Doc. 47 at 2.) Specifically, Defendant argues that "the FAC offers no relevant statistics or other factual allegations to support this conclusion, other than Plaintiff's own personal experience." (*Id.*) Defendant argues that "[c]ourts have repeatedly found such bare allegations insufficient to plead a disparate impact claim." (*Id.*) Defendant argues that "[t]he only evidence Plaintiff does provide purports to show that African Americans are disproportionately convicted of crack cocaine trafficking offenses. However, Plaintiff alleges that Defendant has a policy of not hiring drivers with *any* felony conviction and 'the Court cannot draw an inference of disparity from a single data point.'" (*Id.* at 2-3, citations omitted.) Defendant also argues that the "FAC does not allege a relevant comparison point, let alone one that plausibly suggests a disparate impact." (*Id.* at 4.)

In response, Plaintiff argues that although Defendant "seems to argue a want of a comparator in their motion to dismiss, . . . [P]laintiff does not need a want of a comparator." (Doc. 50 at 2.) Plaintiff further argues that the FAC "does plausibly allege that the defendant has a hiring policy that has a disparity [sic] impact towards [African] Americans that is supported by strong statistical evidence and data." (*Id.*) Plaintiff cites multiple out-of-circuit cases and argues that where evidence of disparate impact is plain, a plaintiff need

not provide statistical evidence.  (*Id.* at 4-5.)

C.    **Analysis**

Title VII makes it unlawful for an employer to "refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e–2(a)(1).  "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).  "To plead a prima facie case of disparate impact, a plaintiff must (1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact."  *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1227 (9th Cir. 2023) (cleaned up).

Defendant argues that Plaintiff fails to satisfy the first prong of this test because "the FAC offers no relevant statistics or other factual allegations" to support the allegation that Defendant's alleged no-hiring-of-felons policy had a "significant disparate impact on a protected class."  (Doc. 47 at 2.)  Although Defendant is correct "that plaintiffs often support their claims of disparate impact with statistics," "statistics are not strictly necessary." *Bolden-Hardge*, 63 F.4th at 1227.  "This is particularly true where a disparate impact is obvious." *Id.  See also United States v. Maricopa Cnty., Ariz.*, 915 F. Supp. 2d 1073, 1078 (D. Ariz. 2012) ("At the motion to dismiss stage, a complaint need not allege statistical data.").

Here, the FAC alleges that Plaintiff is an African-American man (Doc. 46 ¶ 46), that Defendant has a blanket policy of not hiring job applicants who have a felony conviction (*id.* ¶ 103), and that Plaintiff has a felony conviction (*id.* ¶ 10).  Additionally, although many of the disparate-impact allegations in the FAC focus on felony conviction rates specifically related to crack cocaine, rather than on felony conviction rates generally

(*id.* ¶¶ 82, 94-95), the FAC does allege that "1 in 3 African Americans are convicted felons" (*id.* ¶ 96) and insinuates—albeit without expressly alleging—that this conviction rate is higher than the rates associated with other races. (*See, e.g.*, *id.* ¶ 120 ["[T]his type of hiring practice causes a disparity [sic] impact on African Americans, especially if the felon [sic] has no direct relation to the job duties applied for—1 in 3 African Americans are convicted felons."]; *id.* at 60 [attached EEOC report stating that "[a]rrest and incarceration rates are particularly high for African American and Hispanic men"].)  At this early stage of the proceeding, nothing more is required.  *See, e.g.*, *Musa v. Footprint LLC*, 2026 WL 444824, *2 (D. Ariz. 2026) ("At this stage of the proceedings, Plaintiff has alleged enough for a viable disparate impact claim.  [Plaintiff] stated in his Complaint that he is a Muslim.  He identified background checks as the employment practice or policy at issue in his Complaint.  Then, he stated the following: 'Muslims along with Blacks and Latinos have higher rates of arrest and conviction rates then do whites.'  Put simply, [Plaintiff] is stating that [Defendant]'s background check and screening practices have a significant disparate impact on Muslims because they suffer from higher rates of arrest. . . .  Nothing more is required from [Plaintiff] at the motion to dismiss stage and his disparate impact claim may go forward.") (citations omitted); *Lee v. Hertz Corp.*, 330 F.R.D. 557, 561 (N.D. Cal. 2019) ("The Complaint . . . alleges enough facts to establish a prima facie case of disparate impact.  First, Plaintiffs aver Latinos were arrested and convicted of crimes at more than double the rates of whites during the period in question.  Second, Plaintiffs allege Defendants' Screening Policy disqualifies all applicants with any history of a conviction or a prosecution pending for a crime.  Since Plaintiffs aver Latinos were arrested and convicted of crimes at more than double the rates of whites, it is plausible that Defendants' Screening Policy has a disparate impact on Latinos by tending to deprive them of employment opportunities because of their race or national origin. . . .  More is not required from Plaintiffs at the pleading stage."); *Wallace v. Magnolia Fam. Servs., LLC*, 2013 WL 6198277, *4 (E.D. La. 2013) ("[Plaintiff] identifies [defendant]'s facially neutral policy that excludes employees with criminal backgrounds from continued employment.  He

asserts that he is African-American, has a criminal record and was terminated based on that record, pursuant to defendant's policy.  He alleges that the policy has a disparate impact on African-Americans because African-American males are more likely to have criminal records than white applicants. . . .  Accordingly, defendant's motion to dismiss plaintiff's disparate impact claim is DENIED.").

Accordingly, **IT IS ORDERED** that:

1.    Plaintiff's motion to transfer (Doc. 48) is **denied**.

2.    Defendant's motion to dismiss (Doc. 47) is **denied**.

Dated this 31st day of March, 2026.

Dominic W. Lanza
United States District Judge